UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MAHROOFA I. KHAN,

Plaintiff,

v.

CITY AND COUNTY OF SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH,

Defendant.

Case No. 24-cv-09289-LJC

**ORDER GRANTING MOTION FOR SANCTIONS**

Re: Dkt. No. 60

Before the Court is Plaintiff Mahroofa Khan's motion for spoliation sanctions against Defendant the City and County of San Francisco (the City) under Federal Rule of Civil Procedure 37(e) for failing to preserve contemporaneous, timestamped records showing when she used her employee badge to swipe into her workplace. ECF No. 60. A hearing was held on May 5, 2026. Having considered the parties' submissions and oral argument, and the relevant legal authorities, the Court GRANTS Plaintiff's motion.

I.    **BACKGROUND**

A.    **Plaintiff's Factual Allegations**

The facts as alleged in Plaintiff's First Amended Complaint are as follows: Plaintiff alleges that the City's Department of Public Health (DPH) hired her as a pharmacy technician at DPH's Community and Behavioral Health Services (CBHS) pharmacy on June 10, 2023, subject to a six-month probationary period. ECF No. 69 (First Am. Compl.) (FAC) at 3. She alleges that she was the "first and only Fijian-Indian employee" at her location. *Id.* Plaintiff claims that she was treated differently from other probationary employees, subject to "profanity and hostile language," frequently criticized, excluded from workplace social events, and that her complaints to her supervisors were ignored. *Id.* at 4-13, 16. Plaintiff alleges that her six-month probationary period

was set to end on December 24, 2023.  *Id.* at 16.  She was scheduled to work on December 23 and 24, but tested positive for COVID and "went on mandatory 10-day isolation" from December 19 to 29, extending her probationary period.  *Id.*  She returned to work December 30, 2023 and was terminated on January 4, 2024 for unsatisfactory performance.  *Id.* at 17; ECF No. 60 (Motion for Sanctions) at 8.

Plaintiff claims that she did not receive "any formal write-ups, disciplinary actions, or documented performance warnings" and was not "informed of any allegations regarding excessive absence" before she was terminated.  FAC at 17.  After she was terminated, Plaintiff contacted DPH's labor relations specialist Marc Crumpton to ask why she was fired.  *Id.* at 19.  Crumpton allegedly told her she was terminated because she missed work on December 10, 2023.  *Id.* Plaintiff alleges that she then sent a letter disputing the basis of her termination to DPH human resources personnel on January 11, 2024.  DPH conducted an internal investigation into Plaintiff's termination and found "there was no evidence of discrimination."  *Id.* at 20.  Plaintiff then submitted a grievance with the Equal Employment Opportunity Commission (EEOC).  *Id.* at 19-21.  DPH responded to Plaintiff's EEOC grievance on June 5, 2024, denying any wrongdoing.  *Id.* at 20-21.  Plaintiff received a right to sue letter in September 2024 and proceeded to file the instant case against the City.  *Id.* at 21.

**B.      Summary of the Record Related to Spoliation**

In her motion for sanctions, Plaintiff argues that the City failed to preserve relevant evidence that it should have been preserved in the anticipation of litigation.  *See* ECF No. 60.  A summary of the record relating to the City's alleged failure to preserve evidence follows: Plaintiff attests that shortly after she was fired, she "sent multiple letters and emails to HR, Labor Relations, EEO, and union representatives requesting a professional investigation" into her termination and "alleged absenteeism."  *Id.* at 9.  She attests that she sent a letter on January 11, 2024 that "expressly stated that badge records would reflect [her] presence and movements during scheduled shifts."  ECF No. 67 (Supp. Khan Decl.) ¶ 3.  In relevant part, the January 11 letter states:

> As for job abandonment and leaving the pharmacy as you had

2

United States District Court
Northern District of California

> mentioned, if I went to the restroom on any day, I would always let the pharmacy staff know before leaving. . . . On the weekends, [i]f I went upstairs to grab supplies, I would always let the staff know and take my phone with me. I would ask them to call me if you need me to come down, but I would return within 6-8 minutes. On the weekend, if I went upstairs to use the restroom for 5 minutes, I would let them know. I also use my badge to use the elevator and access the restrooms. I'm sure we can get an electronic timestamp of my badge scans (majority of my restroom breaks were at the 4th floor women's restroom).

ECF No. 62-1 at 38.  Later in the letter, Plaintiff describes two incidents on December 10, 2021. She wrote:

> I do not understand how any of the two incidents could be considered as post abandonment – with one being seeing my supervisor during my lunch hour, and the other being me providing community service by helping a victim who was in distress. I use my badge for everything so there is a time stamp for my whereabouts – I did not abandon my job on Dec 10th or any other day.

*Id.* at 44.  Counsel for the City attests that Plaintiff emailed a copy of this letter to the City on January 11, 2024.  *Id.* at 3 ¶ 8.

Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) on February 8, 2024.  *See id.* at 3 ¶ 9; ECF No. 60 at 10.  The City responded to the EEOC charge on June 5, 2024.  ECF No. 62-1 at 3 ¶ 11.  In its response, the City denied Plaintiff's claim that "she was released from probation because of her race and national origin," and explained that she was "released from probation due to unsatisfactory performance" based on her frequent absenteeism. *Id.* at 62.  The City explained:

> On December 20, 2023, a pharmacist reported to Theresa Maranon, the Director of the Pharmacy, that Khan was generally away from her post about forty percent (40%) of the time on weekends. Another pharmacist reported that Khan was often away from her post to move her car, as much as twenty-five (25) minutes and when she was not on a break.  Other pharmacists reported that Khan was often away from her post on weekdays and on weekends, and on at least one occasion had to call her cell phone to ask her to return to work.

*Id.*  Approximately one week after the City issued its response to Plaintiff's EEOC charge, the City Attorney's Office issued pre-litigation hold notices to DPH and "several individuals, including Pharmacy management and several Human Resources personnel," informing them of their duty "to preserve all documents and electronically stored information related to anticipated litigation involving Plaintiff."  *Id.* at 3 ¶ 12.

3

Plaintiff filed suit in December 2024, and the City was served in March 2025. *See* ECF Nos. 1, 10. The City issued updated litigation hold notices to DPH and individual document custodians on April 16, 2025, informing "them of their continued obligation to retain and preserve information and documents relevant to this litigation." ECF No. 62-1 at 4 ¶ 14. The case progressed through early mediation and discovery. On January 27, 2026, Plaintiff served her third set of requests for production of documents, asking, for the first time, that the City produce records from June 10, 2023 to January 4, 2024 showing when Plaintiff used her electronic badge to access the pharmacy. *Id.* at 67. The City had not preserved Plaintiff's badge records from this time period, and thus was unable to produce documents responsive to her request. ECF No. 60 at 9-10; *see* ECF No. 62-3 (Gutierrez Decl.) ¶ 4. Christian Gutierrez, a maintenance planner for DPH's security division, attests that it is DPH's policy to retain data such badge access records for twelve months, and that, after the end of the retention period, the old data is automatically overwritten. ECF No. 62-3 ¶ 4. He attests that "[t]here is no way to recover deleted" badge access records." *Id.*

Theresa Maranon, director of the CBHS pharmacy, attests that CBHS employees use their employee badge to swipe into the pharmacy. ECF No. 62-2 ¶ 2. She attests that employees do not use their badge when leaving the pharmacy and, if multiple employees enter the pharmacy at the same time, only one employee needs to use their badge to open the pharmacy door. *Id.* ¶ 4. Plaintiff attests that her badge swipe logs were contemporaneously timestamped and thus capable of verifying her physical presence in the pharmacy. ECF No. 60 at 9-10. In a declaration in support of her reply brief, she attests there were two doors that required badge access before entering the pharmacy. ECF No. 64 at 6 ¶ 5. She attests that although she "did not badge [herself] into the pharmacy 100% of the time" because security guards or her colleagues could have held the door for her, the badge records "captured a significant record of [her] presence and movement within the facility," particularly on the weekends when the pharmacy was low-staffed. *Id.*

## II.    LEGAL STANDARD

Rule 37(e) permits courts to sanction a party for failing to preserve electronically stored information. It creates two tiers of sanctions. Rule 37(e)(1) permits courts to sanction a party "[i]f

United States District Court
Northern District of California

4

United States District Court
Northern District of California

electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," and the court finds that the other party was prejudiced by the "loss of the information."  No finding of intent is necessary.  Under Rule 37(e)(1), the court "may order measures no greater than necessary to cure the prejudice."  In contrast, Rule 37(e)(2) authorizes sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," and the court finds that spoliating party "acted with the *intent* to deprive another party of the information's use in the litigation."  Fed. R. Civ. P. 37(e)(2) (emphasis added).  Harsher sanctions are available when the court finds intent.  Courts may:

> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

*Id*.  Sanctions under Rule 37(e)(2) are severe and may be imposed only when a party intentionally lost or destroyed evidence in order to prevent its use in litigation.  "Negligent or even grossly negligent behavior" does not suffice.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (Comm. Notes); *see Porter v. City & Cnty. of San Francisco*, No. 16-cv-03771, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018).

Applying Rule 37(e), courts determining whether spoliation of ESI has occurred consider if "(1) the ESI should have been preserved in the anticipation or conduct of litigation; (2) the ESI is lost because a party failed to take reasonable steps to preserve it; and (3) [the ESI] cannot be restored or replaced through additional discovery." *Facebook, Inc. v. OnlineNIC Inc.*, No. 19-cv-07071, 2022 WL 2289067, at *6 (N.D. Cal. Mar. 28, 2022), *recommendation adopted,* 2022 WL 17371092 (N.D. Cal. Oct. 17, 2022) (internal quotations omitted); *see* Fed. R. Civ. P. 37(e). "[T]he applicable standard of proof for spoliation in the Ninth Circuit appears to be by a preponderance of the evidence." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052–53 (S.D. Cal. 2015).  If the court determines that spoliation has occurred and

United States District Court
Northern District of California

the non-offending party has been prejudiced, the court may "order measures no greater than necessary to cure the prejudice[;]"if the spoliation was intentional, the court may order an adverse inference sanction or terminating sanctions. Fed. R. Civ. P. 37(e); *Porter*, 2018 WL 4215602, at *3. "Rule 37(e)(1) does not place the burden of proving or disproving prejudice on one party or the other." *RG Abrams Ins. v. Law Offs. of C.R. Abrams*, 342 F.R.D. 461, 503 (C.D. Cal. 2022).

Courts have discretion in crafting appropriate sanctions that are "no greater than necessary to cure the prejudice" of the spoliation. Fed. R. Civ. P. 37(e)(1). As the Committee Notes explain:

> In an appropriate case, it may be that serious measures are necessary to cure prejudice found by the court, such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies.

However, courts must "ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation." Comm. Notes.

## III.    ANALYSIS

Plaintiff requests that the Court issue spoliation sanctions pursuant to Rule 37(e) against the City "for failing to preserve critical electronic badge swipe records, which are the only objective evidence to refute Defendant's false claims that Plaintiff was 'always missing from work.'" ECF No. 60 at 2. She "requests that the Court issue an adverse inference, legally assuming that the missing badge swipe records would have shown Plaintiff was present at work." *Id.* The City contends that spoliation did not occur, as its duty to preserve the badge access records was not triggered until Plaintiff served her request for the records in January 2026, the City did not intentionally destroy the records, and Plaintiff is not prejudiced by the loss of the records. *See* ECF No. 62 at 2. To resolve this Motion, the Court addresses whether spoliation occurred, the City's intent, whether Plaintiff was prejudiced by the loss of the records, and finally, the appropriate scope of sanctions.

6

### A.    Spoliation

The threshold issue is whether spoliation of the badge access records occurred.  To determine whether spoliation occurred, courts assess whether the offending party had a duty to preserve the ESI at issue and when that duty arose; whether it took reasonable steps to preserve the ESI; and whether the ESI can be restored or replaced through some other discovery method.  *See* Fed. R. Civ. P. 37(e); *OnlineNIC*, 2022 WL 2289067, at *6.

### 1.    Whether the City Had a Duty to Preserve

"The duty to preserve arises when litigation is pending or reasonably foreseeable." *OnlineNIC*, 2022 WL 2289067, at *7.  "A party must preserve evidence that the party knows or should know is relevant to another party's claim or defense, or could lead to the discovery of such evidence." *Deerpoint Grp., Inc. v. Agrigenix, LLC*, No. 18-cv-00536, 2022 WL 16551632, at *11 (E.D. Cal. Oct. 31, 2022); *see RG Abrams*, 342 F.R.D. at 503.

The City concedes that its duty to preserve relevant evidence was triggered as early as June 2024, "when it issued pre-litigation hold notices to DPH and several key document custodians" after responding to Plaintiff's EEOC charge.  ECF No. 62 at 9.  But it argues that this duty to preserve did not extend to Plaintiff's badge access records, as the "focus" of Plaintiff's January 11, 2024 letter, her EEOC charge, and the Complaint "was on making claims of harassment, racial discrimination, and retaliation for use of COVID leave," and the City had no notice that her badge access records might be relevant.  *Id.* at 9.  The City contends that it only received notice that the badge access records might be relevant in January 2026, when Plaintiff served her third set of discovery requests, and by that point the records had been destroyed.  *Id.* at 8-9.

The City's argument is unpersuasive.  Both federal and California law use the "*McDonnell Douglas* burden-shifting test when analyzing" employment discrimination claims, where "the plaintiff bears the initial burden of establishing a prima facie case of employment discrimination" and, if they do so, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  "If the employer articulates a legitimate reason, the plaintiff must raise a triable issue that the employer's proffered reason is

7

United States District Court
Northern District of California

pretext for unlawful discrimination." *Id.* Thus, evidence regarding an employer's "legitimate" reasons for its adverse employment actions are squarely relevant to employee discrimination claims. *Id*.

In the City's June 2024 response to Plaintiff's EEOC charge, the City denied that Plaintiff was released "from probation because of her race and national origin." ECF No. 62-1 at 62. It explained that she was released due to her "unsatisfactory performance" related to absenteeism, based on reports that Plaintiff "was generally away from her post about forty percent (40%) of the time on weekends[,] . . . often away from her post to move her car[,] . . . [and] was often away from her post on weekdays and on weekends." *Id.* As the City claimed that Plaintiff's absenteeism was the basis for her termination, it should have preserved evidence that could help prove or disprove that Plaintiff frequently left the pharmacy and was away from her post. The badge records, which provide a contemporaneous record of when Plaintiff entered the pharmacy and her physical whereabouts during the workday, fit squarely in this category of relevant evidence, and the City was on constructive notice that these records could be relevant to litigation by—at the latest—June 2024, when the City put Plaintiff's alleged absenteeism at issue. *See RG Abrams*, 342 F.R.D. at 503.

More glaringly, shortly after Plaintiff was released from probation, she informed the City that her badge records could show that she was present at work. In Plaintiff's January 11, 2024 letter to the City (filed as an exhibit to the City's counsel's declaration), she disputes that she took frequent or lengthy breaks during her shift. ECF No. 62-1 at 38. She explained that she used her "badge to use the elevator and access the restrooms," and suggested that, to verify when she used the elevator or the restrooms, "we can get an electronic timestamp of my badge scans." *Id.* Later in her letter, she explained that she used her "badge for everything so there is a time stamp for [her] whereabouts." *Id.* at 44. Given that Plaintiff informed the City in January 2024 that her badge records would verify her whereabouts and could rebut the City's claims of absenteeism, and that she directly asked that the City obtain a record of her badge scans, the City's argument that it was not on notice until January 2026 regarding the relevance of Plaintiff's badge access records is untenable. ECF No. 62 at 8-9; *see WeRide Corp. v. Kun Huang*, No. 18-cv-07233, 2020 WL

1967209, at *15 (N.D. Cal. Apr. 24, 2020) (explaining that the duty to preserve evidence "may arise before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation.") (internal quotations omitted).

The Court accordingly finds that the City's duty to preserve the badge records, specifically identified as a category of relevant evidence in January 2024, arose no later than June 5, 2024, when the City asserted in its response to Plaintiff's EEOC charge that Plaintiff was terminated because of her absenteeism and thus made Plaintiff's physical whereabouts a reasonably foreseeable issue in this litigation.

### 2. Whether the City Took Reasonable Steps to Preserve

The next issue is whether the City took "reasonable steps" to preserve the ESI at issue. Fed. R. Civ. P. 37(e). "[T]he prospect of litigation may" require taking steps to intervene in or stop "routine, good-faith operation of" electronic information retention systems. Comm. Notes. A DPH maintenance planner attested that DPH retains access control system records, including badge access records, for twelve months, and the system "automatically overwrites the old data" after twelve months. ECF No. 62-3 ¶ 2.

Though the City issued litigation hold notices to DPH and individuals involved in Plaintiff's termination in June 2024 and April 2025, the hold notices did not include Plaintiff's badge access records. *See* ECF No. 62-1 at 3-4, ¶¶ 12, 14. At the hearing, the City explained that Plaintiff's badge access records from June 2023 to January 2024 had been erased pursuant to DPH's retention policy. The City explains that Plaintiff's badge access records from this period were overwritten "long before" the City was on "notice of the need to preserve Plaintiff's badge access records." ECF No. 62 at 9. As explained above, the Court disagrees with the City's position that its duty to preserve the badge records did not arise until Plaintiff served her third set of requests for production in January 2026. The City's duty to preserve these records began in at least June 2024, and, despite taking steps to preserve other types of evidence, the City failed to suspend its usual document retention policies. As a result, the badge records were destroyed. The Court concludes that the City failed to take reasonable steps to preserve the badge records.

### 3.    Whether the ESI Can be Restored or Replaced

The next inquiry to evaluate if spoliation has occurred is to determine whether the ESI at issue is truly "lost" and cannot be "restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Plaintiff argues that the City "did not preserve the badge swipe records." ECF No. 60 at 4. At the hearing, the City conceded this point. Their declaration in support of their opposition demonstrates that once badge records are overwritten, there is "no way to recover deleted" records. ECF No. 62-3 ¶ 4. The Court accordingly finds that the badge records cannot be restored or replaced through additional discovery.[1]

As the Court finds that the City had a duty to preserve Plaintiff's badge access records by June 2024, failed to take reasonable steps to preserve them, and the records cannot be restored or replaced, the Court concludes that spoliation has occurred. The Court next addresses whether the spoliation was intentional, such that sanctions under Rule 37(e)(2) are warranted, and, if not, whether Plaintiff was nonetheless prejudiced by the spoliation.

### B.    Intent

Rule 37(e)(2) authorizes courts to issue severe sanctions, up to terminating sanctions, if it finds that the spoliating party "acted with the intent to deprive" another party of the ESI at issue so they could not use it in the litigation. "Negligent or even grossly negligent behavior" is insufficient to show intent. Comm. Notes. "[C]ourts have found that a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer, that . . . a party purposefully destroyed evidence to avoid its litigation obligations." *Porter*, 2018 WL 4215602, at *3.

Though Plaintiff claims that the City acted in "bad faith," she provides no evidence showing or reasonably supporting the inference that the City destroyed the records so that Plaintiff could not use them in this litigation. *See* ECF No. 60 at 2. Rather, the City's explanation at the hearing and supporting declarations indicate that the City Attorney's regular litigation hold notices

---

[1] "Evidence that is duplicative of other evidence in the record is not irreplaceable." *RG Abrams*, 342 F.R.D. at 506. As discussed in the analysis of prejudice to Plaintiff, although there are other documents (such as Plaintiff's attendance records and computer activity logs) that will also likely support or detract from the City's claims regarding Plaintiff's alleged absenteeism, these are not duplicative of Plaintiff's badge access records.

10

do not cover badge swipe records, the records were not retained pursuant to the litigation holds because the City did not view them as "relevant to this litigation," and the records were then overwritten after one year pursuant to DPH's retention policy. *See* ECF Nos. 62-1 at 3-4, ¶¶ 12, 1; 62-3 ¶ 4. There is no evidence suggesting that the City destroyed the records to prevent Plaintiff from accessing them or to "keep incriminating facts out of evidence." *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-cv-1893, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016). Given that Plaintiff informed the City at the jump that the records could rebut her alleged absenteeism, the City's failure to preserve the records suggests a lack of due care, even outright sloppiness, but not intentional destruction. The Court accordingly finds that sanctions under Rule 37(e)(2) are not warranted.

### C.    Prejudice

The Court may still enter sanctions if it finds that Plaintiff was prejudiced by the City's spoliation. "Prejudice exists where 'the spoiling party's actions impaired the moving party's ability to go to trial or threatened to interfere with the rightful decision of the case.'" *RG Abrams*, 342 F.R.D. at 507 (quoting *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)). "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Comm. Notes. However, because the information is lost, "[d]etermining the content of lost information"—and thus, its importance to the litigation—"may be a difficult task in some cases" such that "placing the burden of proving prejudice on the party that did not lose the information may be unfair." *Id.* Courts have "discretion" to determine how best to assess prejudice. *Id.* To account for the difficulty in requiring a party to prove the relevance of lost information, courts have held that, to show "prejudice resulting from the spoliation . . . a party must only come forward with plausible, concrete suggestions as to what the destroyed evidence might have been." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 339 (D. Ariz. 2022); *RG Abrams*, 342 F.R.D. at 507. The Ninth Circuit has found prejudice "when a party's refusal to provide certain documents 'forced [plaintiff] to rely on incomplete and spotty evidence' at trial." *RG Abrams*, 342 F.R.D. at 507 (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 354 (9th Cir.

11

United States District Court
Northern District of California

1995)).

Plaintiff argues that she is prejudiced by the loss of the badge access records because these are "the only records capable of independently verifying [her] physical presence," and, "[w]ithout timestamped badge logs," her "legitimate absences" to prepare harm reduction supplies on a different floor or assist "clients outside the pharmacy . . . cannot be independently verified." ECF No. 60 at 4. The City argues that Plaintiff has not been prejudiced, as she "received other records of her work time and work activities through discovery." ECF No. 62 at 11. The City also contends that Plaintiff was terminated for her overall poor performance—not absenteeism exclusively. Consequently, the City takes the position that obtaining the badge records will not allow her to disprove the City's claim that she was dismissed due to underperformance. *Id.* The City additionally argues that Plaintiff's badge records "are not indisputable proof of every time Plaintiff was present at work," as the records just show when employees badge into the pharmacy, and not when "an employee has taken an extended break, engaged in non-work-related activities while in the Pharmacy, . . . exited the Pharmacy," or entered the pharmacy with a coworker using the other coworker's badge. ECF No. 62 at 10-11; *see* ECF Nos. 62-2 (Maranon Decl.) ¶ 4 (attesting to her familiarity with the badge access system and that "an employee badge is only required to enter the Pharmacy"); 62-3 (Gutierrez Decl.) ¶ 3 (attesting that "[e]mployee badge records capture when an employee enters a door using their badge at the badge reader").

Both sides somewhat overstate their positions. Plaintiff's ability to rebut the City's claim that she was terminated for legitimate reasons does not "rel[y] *entirely* on badge swipe records," as she claims. ECF No. 60 at 6 (emphasis added). There is other evidence that she will likely be able to use to show her whereabouts and work activity. Plaintiff attests that the City produced her attendance records and EPIC system logs, which will show her overall "work hours" and times she accessed the City's computerized patient data system. *Id.* at 9. At the hearing, Plaintiff explained that she regularly left the pharmacy to move her car and acknowledged that she likely had records showing when she paid for parking. But contrary to the City's argument, the fact that there are other contemporaneous records showing Plaintiff's whereabouts does not render the badge access records redundant or mean that Plaintiff is not prejudiced by their destruction. The badge records

would have provided an accurate, objective record of every time Plaintiff entered the pharmacy by herself.  Viewed alongside the other records, the badge records would likely have allowed Plaintiff to more fully map out her physical movements at work.  As she explained, she left and re-entered the pharmacy during her workdays for a variety of "legitimate" reasons, such as picking up supplies from a different floor and assisting patients outside of the pharmacy.  ECF No. 60 at 4.  Plaintiff's attendance records, EPIC logs, and parking payments likely would not reflect these activities.  While the badge records would likely not be sufficient on their own to prove whether Plaintiff left the pharmacy for legitimate or dilatory reasons, they would likely be unique datapoints to corroborate testimony and test the City's claims that she was absent from the pharmacy for extended periods of time for improper purposes.[2]

The City's argument that Plaintiff is not prejudiced because she was terminated for her overall poor performance (including excessive time spent chatting with coworkers and incorrectly refilling a medication dispenser) and not just absenteeism, and the badge records would have no bearing on these other aspects of her alleged poor performance, is unavailing.  ECF No. 62 at 9-10.  The City ignores that although it now claims Plaintiff's alleged absenteeism was not the sole basis for her termination, it was still a contributing factor.  Given that a core issue of this case is whether the City had a non-discriminatory, non-pretextual basis for terminating Plaintiff, evidence that could verify or rebut one of the City's claimed bases for the termination is relevant.  *See Earl*, 658 F.3d at 1112.  Destruction of this relevant evidence will likely force Plaintiff "to rely on incomplete and spotty evidence" when trying to disprove the City's claims regarding her absenteeism.  *RG Abrams*, 342 F.R.D. at 507 (internal quotations omitted).  This is sufficient to establish prejudice.

The Court accordingly finds that sanctions pursuant to Rule 37(e)(1) are warranted.

---

[2] For similar reasons, the City's arguments that Plaintiff is not prejudiced because the badge records would only capture when she entered (but not left) the pharmacy and would not capture when she entered the pharmacy alongside a colleague are not persuasive.  ECF No. 62 at 10.  Records showing when Plaintiff entered the pharmacy by herself, although obviously not a perfect reflection of her whereabouts, would, in conjunction with other contemporaneous records, better let Plaintiff construct an objective record of her whereabouts and activities while at work.

United States District Court
Northern District of California

### D.    Appropriate Sanctions

If a court determines that spoliation occurred and the non-offending party is prejudiced, it may "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). While "[t]he range of such measures is quite broad" and fashioning appropriate measures is left "to the court's discretion," given the tiered approach of Rule 37(e) sanctions, courts may not issue adverse inference sanctions under Rule 37(e)(1). Comm. Notes. Sanctions under Rule 37(e)(1) may include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." *Id*.

Plaintiff requests the Court "[i]ssue an adverse inference that the missing badge swipe records would have shown Plaintiff was present at work," as well as "sanctions as appropriate for Defendant[']s bad faith and spoliation of evidence." ECF No. 60 at 7. As explained above, because there is no indication that the City "purposefully destroyed evidence to avoid its litigation obligations," the Court may not issue adverse inference sanctions. *Porter*, 2018 WL 4215602, at *3; *see* Fed. R. Civ. P. 37(e)(2). It is limited to issuing sanctions "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

That leaves the question of what sanctions would "cure the prejudice" to Plaintiff. *Id.* Plaintiff will likely not be severely prejudiced by the loss of the badge access records. As explained above, Plaintiff has other forms of evidence to show, in part, her whereabouts and activity during her workdays. While she is still prejudiced by the loss of the badge records, she will not be wholly unable to present objective evidence to rebut the City's claims regarding her alleged absenteeism. Thus, forbidding the City entirely from putting on evidence regarding Plaintiff's alleged absence from the pharmacy would be "greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Because this matter is set for a bench trial, the range of available lesser sanctions is somewhat curtailed as there is no jury to instruct. *Compare Porter*, 2018 WL 4215602, at *4 (issuing sanctions to instruct jury that defendants had a duty to preserve evidence but failed to do so) *with Bistrian v. Levi*, 448 F. Supp. 3d 454, 478 (E.D. Pa. 2020) (in

14

matter set for bench trial, the court imposed a sanction in which it considered "the video's destruction as one factor among many in making its ultimate determination"). And although courts may award attorneys' fees under Rule 37(e)(1), given that Plaintiff is proceeding pro se, an award of attorneys' fees would presumably be unavailable. *Spencer v. Lunada Bay Boys*, No. CV 16-02129, 2018 WL 839862, at *2 (C.D. Cal. Feb. 12, 2018), *aff'd*, 806 F. App'x 564 (9th Cir. 2020); *Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1011 (D. Ariz. 2011) (explaining, in the context of Rule 37(d)(3), the "general rule" that attorneys' fees awards are not available to pro se litigants "as there is no direct financial cost or charge associated with the expenditure of one's own time") (internal quotations omitted).

Considering these circumstances, to the extent the City presents non-contemporaneous evidence of Plaintiff's alleged absences from work (such as testimony or records created after an alleged absence) to substantiate its asserted legitimate reason for terminating Plaintiff, the Court will consider the destruction of the badge access records as "one factor" in determining whether the City had a legitimate, non-discriminatory reason for terminating Plaintiff. *Bistrian*, 448 F. Supp. 3d at 478; *see DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 863 (N.D. Ill. 2021) ("The trial judge hearing Plaintiff's Lanham Act claims [to be decided via bench rather than jury trial] can consider Defendants' failure to preserve ESI in reaching the judgment on those claims"); *see Johns v. Gwinn*, 503 F. Supp. 3d 452, 474 (W.D. Va. 2020). Given that spoliation occurred but that Plaintiff has not shown she would be severely prejudiced, this lesser sanction is appropriately tailored to the conduct at issue here. The Court may impose further sanctions if it subsequently comes to light that Plaintiff has been more severely prejudiced by the spoliation than is apparent now. *See Lopez v. Apple, Inc.*, No. 19-cv-04577, 2024 WL 4561320, at *9 (N.D. Cal. July 17, 2024).

**IT IS SO ORDERED.**

Dated: May 21, 2026

_____
LISA J. CISNEROS
United States Magistrate Judge